## UNITED STATES v. DEWART MILK PRODUCTS CO., Inc.

(Circuit Court of Appeals, Third Circuit. January 7, 1926.)

No. 3260.

Sales ⬤═285(2)—Under army supply contract, seller held liable for defective quality of canned milk, when notified within one year of purchase.

Where army supply contract for canned milk provided for inspection and rejection for not complying with specifications within one year of purchase, *held*, that government was within its contract rights in notifying seller within one year to replace milk found unfit for human use after inspection, or refund price, notwithstanding contention that guaranty was confined to six months, and Sales Act Pa. 1915, § 49 (P. L. 543; Pa. St. 1920, § 19697), was not applicable.

In Error to the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Action by the United States against the Dewart Milk Products Company, Inc. Judgment for defendant (300 F. 448), and plaintiff brings error. Reversed and remanded.

Paul Shipman Andrews, of Syracuse, N. Y., Jerome Michael, of Washington, D. C., Victor Levine, of Boston, Mass., and Louis Joffe, of New York City, for the United States.

Harry S. Knight and M. H. Taggart, Jr., both of Sunbury, Pa., Phil H. Lewis, of Punxsutawney, Pa., and Knight & Taggart, of Sunbury, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In February, 1918, the United States (hereinafter called the government) sent out specifications and conditions for subsistence and supplies, to which the Dewart Milk Products Company (hereinafter called Dewart) replied agreeing to furnish 96,000 cans of condensed milk in accordance with the said specifications. On April 18, 1918, the milk was delivered to the Quartermaster's Depot at Baltimore, pursuant to government's written order, dated March 19, 1918, which provided, "Deliver * * * in storeroom at New Canton Warehouse," and further stated the milk was "for stock, to be inspected at the depot." The price was promptly paid by the government. Thereafter, to wit, in December, 1918, the milk was inspected, and, for present purposes, we assume was, as averred in the pleadings, when "shipped, sour, coagulated, and unfit for human consumption." On Feb-

9 F.(2d)—45

ruary 8, 1919, notice thereof was given Dewart, and a demand made for the replacement with proper goods or repayment of the money, in the following terms: "It is now found that 1,663 cases, or 79,824 cans, * * * is coagulated, sour, and unfit for human consumption. * * * You may either replace these goods with milk that is good and up to specifications, or send your check for the money value of the milk unfit for use, viz. $7,773.32." On February 11, 1919, Dewart refused to repay or replace the goods, averring "that this milk carried the six months' guaranty, the same as all other milk that we ship to the War Department, Italian government, and British government, which we have been exporting, and as this milk is now eleven months old, you can readily see that our guaranty has lapsed by five months." Thereupon the United States brought this suit to recover back the money paid, and defendant filed an affidavit of defense which averred the expiration of the six months guarantee thus claimed. On hearing on these pleadings, the court below sustained the defendant's contention and entered judgment in its favor. Thereupon the United States sued out this writ of error.

In its opinion the court held, first, the contract was to be performed in Pennsylvania and the contract was controlled by the Pennsylvania Sales Act of 1915 (P. L. 543, § 49; Pa. St. 1920, § 19697), quoted in the margin;[1] second, as a matter of law, it held the inspection was not made and notice given within a reasonable time. Assuming, for present purposes, the contract was to be performed in Pennsylvania, instead of Maryland, and would ordinarily be governed by its Sales Act, it will be seen that this act applied "in the absence of express or implied agreement of the parties." As we view it, the court below failed to recognize the fact that by their contract the United States and Dewart had provided for inspection in their own way and time, and that the case was not one of "the absence of express or implied agreement of the parties," where alone the Sales Act intervenes and fixes for the parties provisions they had not made for themselves.

---

[1] "*In the absence of express or implied agreement* of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or *other legal remedy for breach* of *any promise or warranty in the contract to sell or the sale.* But if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor."

To us it is clear that the contract, taken as a whole, left the time of inspection, within certain time limits, to be fixed by the government. Section 19 provides: "Deliveries must be equal to * * * prescribed standards, and each purchasing officer shall make the determination in each case." Section 250 provides that condensed milk shall "conform to the standards adopted by the United States Department of Agriculture." Section 24 provides for inspection of goods and also samples in these words (the italics ours): "Supplies, including packages offered for acceptance, shall be subject to *such inspection as deemed necessary* by the purchasing officer, and *whenever in his opinion* the same are not of the kind or quality stipulated for they shall be rejected." Under the head of reclamation the contract provided for replacements for defective goods ·as follows: "Provided, the damaged condition resulted through fault of the seller, reclamation will be made for losses on * * * canned milk for one year from date of purchase."

In view of these provisions, the inspection being one to be made by the purchasing officer, the rejection being made by him whenever, in his opinion, the articles are not as stipulated, and the government being given, in the case of canned milk, one year from the date of purchase, wherein it could call on the seller to replace the goods, it seems to us that the government was within its contract rights when, within such year, to wit, in December, 1918, it inspected the goods, found them unfit for human use, and also, within the year, to wit, in February, 1919, notified the seller to either replace the articles or refund the money mistakenly paid. When the defendant refused to replace goods or refund money, because its guaranty was confined to six months, the answer is the contract did not so provide, and, when the court held the Pennsylvania statute determined the rights of the parties as to inspection and re- ·jection, the answer is that the contract of the parties, which in canned milk gave the government a year's leeway for rejection and demand for replacement, determined the rights and liabilities of the parties. So holding, we are of opinion the court was in error in writing into the contract the Pennsylvania Sales Act, and holding as a matter of law that the government's right to inspect, reject, and reclaim "canned milk for one year from date of purchase" was unfounded.

Its judgment must therefore be reversed, and the case remanded for procedure in due course.

